```
IN THE UNITED STATES DISTRICT COURT
   FOR THE SOUTHERN DISTRICT OF ALABAMA
              SOUTHERN DIVISION
```

| | |
|---|---|
| JOHN H. STADMIRE, | * |
| Plaintiff, | *  CIVIL ACTION NO. 15-00426-B |
| vs. | * |
| CAROLYN W. COLVIN,<br>Commissioner of Social<br>Security, | * |
| Defendant. | * |

## ORDER

Plaintiff John H. Stadmire (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On June 13, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**

Plaintiff protectively filed his application for benefits

on September 20, 2012. (Tr. 149). Plaintiff alleged that he has been disabled since April 1, 2011, due to back problems, high blood pressure, and high cholesterol. (Id. at 149, 163).

Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Linda J. Helm (hereinafter "ALJ") on March 18, 2014. (Id. at 31). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id. at 33). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 62). On April 28, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 19). The Appeals Council denied Plaintiff's request for review on July 20, 2015. (Id. at 1-2). Therefore, the ALJ's decision dated April 28, 2014, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on June 13, 2016 (Doc. 16), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II. **Issues on Appeal**

>    1. **Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Sid Crosby, M.D., while assigning significant weight to the opinions of non-examining, reviewing**

2

State Agency physician, Dr. Douglas Chang, M.D.?[1]

2. Whether the ALJ's RFC assessment is supported by substantial evidence?

**III. Factual Background**

Plaintiff was born on September 4, 1951, and was sixty-two years of age at the time of his administrative hearing on March 18, 2014. (Tr. 35, 149). Plaintiff graduated from high school and worked for thirty-nine and a half years (until April 2011) for Alabama Power Company as a heavy equipment operator.[2] (Id. at 35, 40-41).

At his hearing, Plaintiff testified that he has pain in his back that affects his every day movement. (Id. at 42-43). He testified that he wears a back brace that he got from work in 2004, and it "helps a lot." (Id. at 39). He also takes Ibuprofen every day, and it "pretty much" controls the pain with no side effects. (Id. at 43-46). He takes no other medication for his back.[3] (Id. at 46). Plaintiff testified that he also has high blood pressure, which is helped with medication (id. at

---

[1] Because these issues are interrelated, the Court discusses them together.

[2] Plaintiff testified that he worked in the coal yard at Alabama Power, lowering barges with cranes, operating a tractor, running a bulldozer, and working in the control room. (Tr. 41).

[3] Plaintiff testified that he tried to take Lyrica for his back pain, but he did not like the way it made him feel, and he stopped taking it. (Tr. 45-46).

46-47), and he has vertigo, which is "pretty much" controlled with medication, although the medication makes him drowsy. (Id. at 47-48, 57). Plaintiff testified that he has no other medical problems that prevent him from working.[4] (Id. at 50).

Plaintiff testified that he lives alone in his own home. (Id. at 38). He takes care of his home, cooks, does laundry, does yard work, drives, shops, and takes care of his own banking and finances. (Id. at 52-53). His normal routine consists of getting up at 6:00 a.m., playing games on the television, washing clothes, and going outside as much as possible. (Id. at 55). He goes fishing every once in a while. (Id.).

Plaintiff testified that he can walk about thirty minutes, stand about fifteen minutes, sit about fifty minutes, and can lift about ten pounds. (Id. at 50-51). In his Function Report, Plaintiff stated that he needs no reminders to take care of his personal needs, to take his medicine, or to go places (id. at 156, 158), that he visits with others (id. at 158), that he can go out unaccompanied (id.), that he has no problems getting along with others (id. at 159), that he can follow written and spoken instructions "fairly well" (id.), that he gets along "good" with authority figures (id. at 160), and that he has

---

[4] Plaintiff testified that he has "mild" kidney disease which has required no treatment. (Tr. 44, 217, 299). He has no mental health problems. (Id. at 51).

4

never been fired from a job because of problems getting along with people (id.); but he cannot pay attention for long (id. at 159), and he does not handle stress or changes in routine well. (Id. at 160).

**IV. Analysis**

    **A.    Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[5] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial

---

[5] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

5

evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

B. **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[6] 20 C.F.R.

---

[6] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the

6

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 1, 2011, the alleged onset date, and that he has the severe impairments of high blood pressure, lumbar back pain, and vertigo. (Tr. 21). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of medium work, except that Plaintiff is restricted to "lifting and/or carrying no more than 50 pounds occasionally and 25 pounds frequently, no overhead reaching, no climbing ladders, scaffolds and ropes, no crawling, no work at unprotected heights

---

examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

or dangerous equipment, no operating of commercial vehicles, no working with heavy vibrations, only occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching, and no rapid production pace work defined as work that is pushed at the individual on a conveyor belt and the individual has no control over the pace of the work and no movement of the head more than twice a minute to follow items." (Id. at 22). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were only partially credible for the reasons explained in the decision. (Id. at 23). The ALJ found that Plaintiff is unable to perform any of his past relevant work as an operational engineer. (Id. at 24). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of medium work, as well as his age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as a "kitchen helper," "dining room attendant," and a "baggage porter," all of which are classified as medium and unskilled. (Id. at 25, 65). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 25).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

8

1. **Issues**

   A. **Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Sid Crosby, M.D., while assigning significant weight to the opinions of non-examining, reviewing State Agency physician, Dr. Douglas Chang, M.D.?**

In this case, Plaintiff argues that the ALJ erred in rejecting the opinions of his long time treating physician, Dr. Sid Crosby, M.D., set forth in a medical questionnaire form completed on September 6, 2013. (Doc. 9 at 1-3). In the questionnaire form, Dr. Crosby opined that physical activity would greatly increase Plaintiff's symptoms and would cause distraction from tasks or total abandonment of tasks and that Plaintiff could not engage in any form of gainful employment as a result of his "present back condition." (Tr. 284). Plaintiff also argues that the ALJ erred in assigning significant weight to the opinions of non-examining, reviewing State Agency physician, Dr. Douglas Chang, M.D., that Plaintiff has the RFC to perform medium work. (Id. at 5-6). The Commissioner counters that the medical evidence does not support Dr. Crosby's opinions set forth in the disability questionnaire form, and, to the contrary, that Dr. Crosby's opinions are inconsistent with the substantial evidence in the case and, thus, were properly discredited by the ALJ. (Doc. 14 at 7-8). The Commissioner further argues that the ALJ assigned the proper weight to the

9

opinions of Dr. Chang, which were supported by the substantial evidence in the case. (Id. at 6). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claims are without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford,

363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical

11

opinion if the evidence supports a contrary finding.).

In support of his argument that the ALJ erred in discrediting Dr. Crosby's opinion that Plaintiff cannot engage in any form of gainful employment because of his "present back condition," Plaintiff points to the following evidence which he alleges establishes his disability:

(1) "Dr. Crosby has been [his] primary care physician since 2003 and has treated [him] for back pain since 2010. Tr. at 241;"

(2) "On December 29, 2010, Plaintiff was assessed as having *tenderness* in his midline lumbosacral area. Tr. at 242;"

(3) "Dr. Crosby diagnosed the Plaintiff with a lumbar *strain* and left sided sciatica. Id.;"

(4) "On August 1, 2011 and August 16, 2011, Plaintiff was noted as having a positive left side straight leg raise. Tr. 234, 236;"

(5) "Plaintiff was diagnosed with lumbosacral *strain*. Id.;"

(6) "Plaintiff was noted as having *decreased range of motion and decreased flexion* on September 23, 2011. Tr. 231.;"

(7) "Plaintiff was diagnosed with lumbosacral *strain*. Id.;"

(8) "On September 10, 2012, Plaintiff reported worsening lower back pain, *moderate* in severity. Tr. 213;"

(9) "Dr. Crosby noted *decreased range of motion* and *very tight hamstrings* and diagnosed with low back pain. Tr. 217;"

(10) "Plaintiff was diagnosed with neck pain/cervicalgia on January 18, 2012. Tr. 223;"

(11) "On January 8, 2013, Plaintiff was evaluated in a consultative examination by Dr. Steve Furr. Tr. 202-204,"[7] and an "x-ray of the Plaintiff's lumbosacral spine revealed a *slight calcification of the aorta*. Tr. at 202;"

(12) "Plaintiff was diagnosed with low back pain on January 8, 2013. Tr. at 202;"

(13) On September 6, 2013, Plaintiff was found to have *tenderness* in his midline lumbosacral area, a positive straight leg raise on his left side, and decreased range of motion. Tr. at 289;" and

(14) "Plaintiff was diagnosed with dizziness and low back pain. Id." (Doc. 9 at 2, 4-5) (emphasis added).

Contrary to Plaintiff's argument, this evidence does not establish that his medical conditions, considered alone or in combination, are disabling. Indeed, with respect to his primary medical problem (his back condition), Plaintiff's evidence shows nothing more than back "strain" causing tenderness, decreased range of motion, and complaints of "moderate" back pain. Even the x-ray of Plaintiff's lumbosacral spine showed no

---

[7] The record shows that Dr. Furr completed a consultative x-ray of Plaintiff's lumbosacral spine at the request of the Agency but did not otherwise conduct any examinations or proffer any opinions. (Tr. 202).

13

abnormalities with his back and only a "slight" calcification of his aorta. (Tr. 204).

A review of the record further shows that Dr. Crosby began treating Plaintiff for low back pain on December 29, 2010, when Plaintiff injured his back "checking coon traps." (Id. at 241). Plaintiff presented on that date with complaints of a sudden onset of "mild" "aching" on both sides of his back. (Id.). His physical examination revealed "normal" range of motion and a negative straight leg raise, with "tenderness" along the midline lumbosacral spine. (Id. at 242). Dr. Crosby diagnosed Plaintiff with "lumbosacral strain," noting that Plaintiff "responded well to manipulation." (Id.). Dr. Crosby assigned no functional limitations and prescribed no medical treatment. (Id.). Four months later, on April 1, 2011, Plaintiff stopped working, alleging disability based on back problems, high blood pressure, and high cholesterol. (Id. at 41, 149, 163).

Over the next three years, Dr. Crosby continued to treat Plaintiff for low back strain, sometimes causing "moderate" pain and decreased range of motion and occasionally causing a positive straight leg raise. (Id. at 43, 213, 216, 231, 233-36, 289). Dr. Crosby routinely refilled Plaintiff's prescription for 800 mg Ibuprofen, which Plaintiff testified provided some relief. (Id.). Dr. Crosby also prescribed Lorcet and Lyrica for pain but discontinued the medication when Plaintiff

14

complained that it made him feel strange. (Id. at 45-46, 222, 234). Dr. Crosby also recommended physical therapy on two occasions, but it appears that Plaintiff never followed through with scheduling. (Id. at 217, 231). In any event, at no time prior to September 6, 2013, did Dr. Crosby ever assign any functional limitations as a result of Plaintiff's back condition or even order an x-ray or MRI.

Dr. Crosby also treated Plaintiff from 2002 to 2013 for other medical conditions including vertigo, high blood pressure, and high cholesterol. The record shows that these conditions were largely controlled with medication, and at no time did Dr. Crosby or any other medical source ever opine that any of these conditions resulted in functional limitations. (Id. at 47-48, 210-11, 225, 234, 290, 297-99).

As discussed above, on September 6, 2013, Dr. Crosby completed a disability questionnaire form opining that physical activity would greatly increase Plaintiff's symptoms and cause distraction from tasks or total abandonment of tasks and that Plaintiff could not engage in any form of gainful employment due to his "present back condition."[8] (Id. at 284). Curiously, Dr. Crosby's examination findings on that same date reflect no

---

[8] Dr. Crosby also opined that Plaintiff may need an MRI or epidural steroid treatment within the following year. (Tr. 284).

musculoskeletal problems, "normal" muscle mass and tone, no bony abnormalities, and only "tenderness" in the midline lumbosacral spine with a positive straight leg raise on the left side and decreased range of motion. (Id. at 286, 289). These examination findings, as well as Dr. Crosby's treatment records as a whole, are clearly inconsistent with the severity of Dr. Crosby's opinions set forth in the September 6, 2013, disability questionnaire form, particularly Dr. Crosby's opinion that Plaintiff cannot engage in any form of gainful employment because of his "present back condition." (Id. at 284).

In addition to being inconsistent with his own treatment records, Dr. Crosby's opinions are inconsistent with the remaining substantial evidence in this case, including the January 8, 2013, consultative x-ray of Plaintiff's lumbosacral spine taken by Dr. Steven Furr, M.D., which showed a completely "normal" spine. (Id. at 202, 204). Contrary to Plaintiff's argument, the only abnormal finding from the x-ray was a "slight" calcification of the aorta. (Id.).

Dr. Crosby's opinions are also inconsistent with the opinions of State Agency reviewer, Dr. Douglas Chang, M.D., that Plaintiff has an RFC for medium work. (Id. at 74-75, 283). Dr. Chang affirmed findings that Plaintiff can frequently lift/carry twenty-five pounds and can stand and/or walk and sit with normal breaks for a total of six hours in an eight-hour work day.

16

(Id. at 74-75).

In addition, Dr. Crosby's opinions are inconsistent with Plaintiff's reported activities of daily living, which include living on his own, cooking, doing laundry, going outside as much as possible, doing yard work, fishing, driving, shopping, visiting others, taking care of his own banking and finances, and walking for thirty minutes at a time. (Id. at 38, 50-55, 156-58).

Having reviewed the record at length, the Court finds that the ALJ had good cause to reject Dr. Crosby's opinion that Plaintiff's "present back condition" prevents him from any type of gainful employment, as that opinion is inconsistent with the substantial evidence in the case. In addition, the Court finds that the ALJ properly assigned substantial weight to the opinion of Dr. Chang that Plaintiff has the RFC to perform medium work, as Dr. Chang's opinion did not conflict with any credible opinion of an examining physician. See Milner, 275 Fed. Appx. at 948. Accordingly, for each of these reasons, Plaintiff's claims must fail.

### B. Whether the ALJ's RFC assessment is supported by substantial evidence?

Plaintiff also argues that the ALJ erred in finding that he has the residual functional capacity to perform a range of medium work, except that Plaintiff is restricted to "lifting

17

and/or carrying no more than 50 pounds occasionally and 25 pounds frequently, no overhead reaching, no climbing ladders, scaffolds and ropes, no crawling, no work at unprotected heights or dangerous equipment, no operating of commercial vehicles, no working with heavy vibrations, only occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching, and no rapid production pace work defined as work that is pushed at the individual on a conveyor belt and the individual has no control over the pace of the work and no movement of the head more than twice a minute to follow items." (Tr. 22; Doc. 9 at 7). The Commissioner counters that substantial evidence supports the ALJ's RFC assessment. (Doc. 14 at 10). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10,

2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

Based on the evidence set forth in detail herein (specifically including Dr. Crosby's treatment records, Dr. Chang's opinion that Plaintiff can perform medium work, and the evidence of Plaintiff's activities of daily living), the Court finds that the substantial evidence in this case supports the ALJ's finding that Plaintiff can perform a range of medium work, with the stated restrictions. Accordingly, Plaintiff's claim is without merit.

**V.   Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED**.

**DONE** this **12th** day of **September, 2016.**

                                              **/s/ SONJA F. BIVINS**
                                 **UNITED STATES MAGISTRATE JUDGE**